IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LEEP, INC., an Oregon corporation,

        Plaintiff,

        v.

JOHN NORDSTROM, an individual,

        Defendant.

Case No. 6:20-cv-01673-MC

OPINION AND ORDER

**MCSHANE, Judge**:

Plaintiff LEEP, Inc., an Oregon corporation, brings this action against Defendant John Nordstrom after LEEP removed, or attempted to remove, Nordstrom as a Director and CEO of LEEP.[1] LEEP seeks injunctive and declaratory relief preventing Nordstrom from acting as LEEP's CEO, and claims of breach of contract, failure to account and report, corporate malfeasance, breach of fiduciary duty as Director and Officer, and waste of corporate assets. Nordstrom moves to dismiss the claims against him for lack of personal jurisdiction. For the reasons stated below, the Motion to Dismiss, ECF No. 2, is DENIED.

---

[1] The action is driven by Scott Record, the son of Grant Record. Grant Record founded LEEP in 1968. Nordstrom contends the attempted removal was invalid and that he remains LEEP's CEO. The Court continues to maintain that the issue of who controls LEEP appears to be a simple issue that should be resolved on an expedited basis with limited discovery.

1 – OPINION AND ORDER

# BACKGROUND[2]

Founded in 1968, LEEP is a publicly traded Oregon corporation with approximately 1260 shareholders. Pl.'s Compl. ¶¶ 2, 9-10; ECF No. 1. LEEP has corporate offices in Kentucky, and its principal place of business in Idaho. Def.'s Decl. ¶ 3, ECF No. 33; Tr. 14, ECF. No. 17.

Nordstrom, a Kentucky resident, was appointed as CEO of LEEP and made a member of its Board of Directors in 2007. Pl.'s Compl. ¶¶ 5, 14. From 2007 to 2020, Nordstrom often failed to file annual reports with Oregon, and when the reports were filed, they were often untimely, resulting in the corporation being administratively dissolved several times. Pl.'s Compl. ¶¶ 15-16.

LEEP alleges Nordstrom's actions when he was a Director and CEO breached several fiduciary and other duties. Those allegations, interesting as they may be, are largely irrelevant to Nordstrom's pending motion to dismiss for lack of personal jurisdiction. To that end, Nordstrom states:

> I have had no significant, substantial, or sustained personal or business contacts in Oregon. I did have occasional filings with the Secretary of State of Oregon in my capacity as CEO of Leep. I have not traveled to or shipped anything to Oregon for business purposes, have had no customers in Oregon, and have had no potential customer telephone conferences in Oregon. While I have had a few personal phone calls with friends in Oregon, I did not travel to Oregon to visit my friends during the time period set forth in Plaintiff's complaint.

Nordstrom Decl. ¶ 4, ECF No. 33.

As noted, Nordstrom has been a resident of Kentucky for 40 years and has never been a resident of Oregon. *Id.* at ¶ 2. And while the complaint alleges nefarious actions during a corporate dispute with Outdoor Venture Corp., Nordstrom states those actions occurred in

---

[2] At the motion to dismiss stage, this Court takes all of Plaintiff's allegations as true. *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000).

2 – OPINION AND ORDER

Kentucky and New York and that "[n]one of the facts alleged [in that corporate dispute] occurred in the state of Oregon." *Id.* at ¶ 5. "The private arbitration that plaintiff references in the instant lawsuit was held [in] Lexington, Kentucky. The attorney who represented LEEP for this private arbitration is located in Kentucky." *Id.* at ¶ 7. As noted, Nordstrom argues that given his limited contacts with Oregon, this Court lacks personal jurisdiction over him.

## **DISCUSSION**

Because there is no applicable federal statute governing personal jurisdiction, the Court looks at Oregon law.[3] Oregon law authorizes personal jurisdiction to the full extent permitted by the Due Process Clause of the U.S. Constitution. *See* Or. R. Civ. P. 4L. To establish personal jurisdiction, Plaintiff must show that Nordstrom had "minimum contacts" with Oregon, such that the exercise of personal jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts can be shown through a finding of general or specific personal jurisdiction. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004).

Oregon long-arm statutes are clear that Oregon has jurisdiction "[i]n any action against a defendant who is or was an officer or director of a domestic corporation where the action arises out of the defendant's conduct as such officer or director or out of the activities of such corporation while the defendant held office as a director or officer." Or. R. Civ. P. 4G. As Nordstrom's lone argument in opposition to rule 4G is remarkably brief, the Court includes it here in its entirety:[4]

---

[3] The state law that applies is determined by the state in which the district court sits. *See* Fed. R. Civ. P. 4(k)(1)(A); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).

[4] Nordstrom did not mention rule 4G in his motion and only addressed the rule in his reply.

3 – OPINION AND ORDER

> ORCP 4G provides personal jurisdiction over a corporate officer for conduct or activities *as a corporate officer.* Plaintiff brought its complaint not against Defendant in his role as the CEO of Leep, Inc., but in his personal capacity. Plaintiff should not be allowed to file a complaint against an individual, in their personal capacity, and then argue that the Court has personal jurisdiction over the individual pursuant to ORCP 4G.

Def.'s Reply 2, ECF No. 35.

The Court disagrees. The Supreme Court has rejected the idea "that employees who act in their official capacity are somehow shielded from suit in their individual capacity." *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 n.13 (1984) (citing *Calder v. Jones*, 465 U.S. 783, 789-790 (1984)). In *Calder*, the Supreme Court held that the president and editor of a magazine, whose only contacts with a forum state was in his official capacity, could be held individually liable for those contacts. 465 U.S. at 789-790.

Here, LEEP brings tort and contract claims against Nordstrom individually for his actions (or inactions) as LEEP's CEO and Director. For instance, Plaintiff alleges that Nordstrom failed to file required reports with the Oregon Secretary of State. Pl.'s Compl. ¶ 15. Additionally, Nordstrom made LEEP's confidential information available to another corporation. *Id.* at ¶ 28. Nordstrom made these disclosures without notifying LEEP's Board of Directors. *Id.* at ¶ 41. And Nordstrom violated LEEP's bylaws by holding no shareholder meetings. *Id.* at ¶ 50. As LEEP is an Oregon corporation, and "the action arises out of the defendant's conduct as such officer or director or out of the activities of such corporation while the defendant held office as a director," this Court has jurisdiction based on the express language of Or. R. Civ. P. 4G.

The Supreme Court's analysis in *Shaffer v. Heitner*, 433 U.S. 186, 213-16 (1977) confirms that rule 4G provides a basis for personal jurisdiction over Nordstrom. There, a shareholder brought claims against the directors of a corporation in Delaware, where the corporation was organized. Plaintiff utilized Delaware's sequestration statute, which "allows a court . . . to take jurisdiction of a lawsuit by sequestering any property of the defendant that happens to be located in Delaware." *Id.* at 189. The sequestered property consisted of shares of corporate stock and stock options. The statute's purpose was not to secure possession of the property, but rather "to compel the appearance of the defendant" in the underlying action. *Id.* at 194. In concluding the statute alone did not support a finding of personal jurisdiction over the defendant-appellants, the Court noted:

> The Delaware courts based their assertion of jurisdiction in this case solely on the statutory presence of appellants' property in Delaware. Yet that property is not the subject matter of this litigation, nor is the underlying cause of action related to the property. Appellants' holdings in [the corporation's stock] do not, therefore, provide contacts with Delaware sufficient to support the jurisdiction of that State's courts over appellants. If it exists, that jurisdiction must have some other foundation.
>
> Appellee Heitner did not allege and does not now claim that appellants have ever set foot in Delaware. Nor does he identify any act related to his cause of action having taken place in Delaware. Nevertheless, he contends that appellants' positions as directors and officers of a corporation chartered in Delaware provide sufficient "contacts, ties, or relations, with that State to give its courts jurisdiction over appellants in this stockholder's derivative action. This argument is based primarily on what Heitner asserts to be the strong interest of Delaware in supervising the management of a Delaware corporation. That interest is said to derive from the role of Delaware law in establishing the corporation and defining the obligations owed to it by its officers and directors. In order to protect this interest, appellee concludes, Delaware's courts must have jurisdiction over corporate fiduciaries such as appellants.
>
> This argument is undercut by the failure of the Delaware Legislature to assert the state interest appellee finds so compelling. Delaware law bases jurisdiction, not on appellants' status as corporate fiduciaries, but rather on the presence of their property in the State. Although the sequestration procedure used here may be

> most frequently used in derivative suits against officers and directors, the authorizing statute evinces no specific concern with such actions. Sequestration can be used in any suit against a nonresident, and reaches corporate fiduciaries only if they happen to own interests in a Delaware corporation, or other property in the State. But as Heitner's failure to secure jurisdiction over seven of the defendants named in his complaint demonstrates, there is no necessary relationship between holding a position as a corporate fiduciary and owning stock or other interests in the corporation. If Delaware perceived its interest in securing jurisdiction over corporate fiduciaries to be as great as Heitner suggests, we would expect it to have enacted a statute more clearly designed to protect that interest.

*Id.* at 213-15 (internal citations and footnotes omitted).

Oregon Rule of Civil Procedure 4G, however–the statute missing in *Shaffer*– demonstrates Oregon's intention of making directors of Oregon corporations liable in Oregon courts for their actions taken as directors of the company. Unlike the sequestration statute in *Shaffer*, rule 4G expressly limits jurisdiction to officers of the corporation (rather than anyone who happens to own property in Oregon). Additionally, the statute further limits jurisdiction only to those actions "where the action arises out of the defendant's conduct as such officer . . . while the defendant held office as a director[.]" Unlike the Delaware sequestration statute, in enacting rule 4G, Oregon legislators "enacted a statute that treats acceptance of a directorship as consent to jurisdiction in the State." *Shaffer*, 433 U.S. at 216.

Further, this is not an instance where a finding of personal jurisdiction offends "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken*, 311 U.S. at 463). Nordstrom chose to take a Director and CEO position with an Oregon corporation and spent significant time in these positions.[5] Pl.'s Compl. ¶ 3; *see* Nordstrom Decl. ¶ 4. While LEEP may have its headquarters in Kentucky, it is governed by Oregon laws and

---

[5] Absent rule 4G, Nordstrom's decision to take a position as LEEP's CEO and director alone is not sufficient to establish personal jurisdiction. *See Shaffer*, 433 U.S. at 214-216.

regulations. *See* Or. Rev. Stat. § 60; *see also* Or. R. Civ. P. 4G. As noted, LEEP alleges Nordstrom's "failure to maintain the corporate form" caused the corporation to be administratively dissolved seven times, resulting in Nordstrom having to sign LEEP's reinstatement with the Oregon Secretary of State six of those times. Pl.'s Resp. 3; Pl.'s Compl. Ex 1, at 2-3. Nordstrom's contact with Oregon was not an isolated or fleeting business contact, but instead a long-term relationship as the CEO of an Oregon corporation that spans 13 years, including multiple direct contacts with the state of Oregon with each reinstatement of LEEP. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 480 (1985). This is not a case where Nordstrom "simply had nothing to do with the State of [Oregon and] no reason to expect to be haled before a [Oregon] court." *Shaffer*, 433 U.S. at 216. Instead, Nordstrom's actions (and inactions) with respect to filings with the Oregon Secretary of State form the basis behind Plaintiff's claim for breach of contract. Pl.'s Compl. ¶¶ 123, 125. In other words, Nordstrom directed his actions (and inactions) toward the forum state and Plaintiff's claims arise directly out of Nordstrom's dealings with Oregon. *Schwarzenegger*, 374 F.3d at 802.

## CONCLUSION

As discussed above, Defendant's Motions to Dismiss (ECF No. 32) for lack of jurisdiction is DENIED.

IT IS SO ORDERED.

DATED this 29th day of April 2021.

                                                      /s/ Michael J. McShane
                                                      Michael McShane
                                            United States District Judge