IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

LEEP, INC., an Oregon corporation,

        Plaintiff,

v.

JOHN NORDSTROM, an individual,
AMERICAP CO., L.P., AMERICAP
TWO, AMERICAP THREE,
LAURENCE ZIELKE and ZIELKE
LAW FIRM,

        Defendants.

Case No. 6:20-cv-01673-MC

OPINION AND ORDER

---

**MCSHANE, Judge**:

        Over 17 months ago, Plaintiff LEEP, Inc., ("LEEP") brought claims against Defendants Laurence Zielke ("Zielke"), and Zielke Law Firm, PLCC ("ZLF") alleging in part that Zielke and ZLF breached their fiduciary duties while providing legal services to LEEP. Pl.'s First Am. Compl. ¶¶ 241–85, ECF No. 144 ("FAC"). Specifically, LEEP brought those claims against the attorneys:

> who represented LEEP for breach of their duty as attorneys by (i) refusing to acknowledge and accept the direction of the LEEP's duly elected Board of Directors in prosecuting an arbitration against Outdoor Ventures Corporation and failing to account for and deliver to LEEP contract payments deposited with XLF for the benefit of LEEP (ii) negligently failing to insist the arbitration proceeding in which they represented LEEP should be postponed until who controlled LEEP

1 – OPINION AND ORDER

was resolved by a court of competent jurisdiction, and (iii) failing to deliver funds in their possession belonging to LEEP to LEEP rather than Nordstrom.

*Id.* ¶ 3.

Nearly one year ago, this Court concluded that because the Zielke Defendants lacked sufficient minimum contacts with Oregon, the Court lacked personal jurisdiction over those Defendants. Dec. 5, 2022, Opinion and Order, ECF No. 184. The Court found that the only connection those Defendants had with Oregon was the fact that they served as legal counsel to a company incorporated in Oregon. Defendants provided all of the legal services in Kentucky. There is no indication that any party in this dispute, about to enter its fourth year, had ever even set foot in Oregon. The Court ultimately concluded:

> The Court finds that Plaintiff has not satisfied the "purposeful direction" test. Zielke, et al. committed an intentional act—serving as Plaintiff's legal counsel—and Zielke, et al. knew the harm of any negligent representation would likely be suffered by Plaintiff in Oregon.[1] However, Zielke, et al.'s conduct was not "expressly aimed at the forum state." Plaintiff fails to present any facts showing Zielke, et al.'s contacts with Oregon apart from Zielke, et al.'s attorney-client relationship with Plaintiff. And the substance of that relationship and the alleged tortious conduct all took place in Kentucky. Zielke, et al. never represented Plaintiff in an Oregon court, never traveled to Oregon to meet with Plaintiff, never communicated with Plaintiff in Oregon. Zielke, et al.'s communication with Plaintiff was through Nordstrom, who lives in Kentucky. Neither Zielke nor any other attorney at ZLF is admitted to practice law in Oregon. Plaintiff is the only link between Zielke, et al. and Oregon, and under *Walden* that is insufficient to establish specific personal jurisdiction.
>
> Plaintiff argues that Zielke, et al. purposefully directed their activities toward Oregon through their actions as Plaintiff's counsel. First, Plaintiff asserts that Zielke, et al.'s representation of Plaintiff went beyond the litigation and arbitration in Kentucky to more general representation of Plaintiff, representation that may have involved "questions of Oregon law." Pl.'s Resp. 1–3, 10. But even if Zielke, et al. did represent Plaintiff in other matters, that fact does not show an additional purposeful contact with Oregon or a connection between Oregon and the specific claims at issue here. Rather, that fact shows Zielke, et al. had merely a "random, fortuitous, or attenuated" contact with Oregon because Nordstrom—a

---

[1] Even though Plaintiff's principal place of business has moved over the years, Plaintiff is incorporated in Oregon. *See* Pl.'s Resp. 11.

2 – OPINION AND ORDER

>   Kentucky resident—was referred to Zielke, et al. while seeking legal services—in Kentucky—on Plaintiff's behalf. FAC ¶ 60; Def. Zielke, et al.'s Mot. Dismiss 9.
>
>   Second, relying on evidence of communications between Zielke, et al. and Nordstrom, Plaintiff asserts that Zielke, et al. instructed Nordstrom to defy Plaintiff's Board of Directors, thereby deliberately interjecting themselves into the issue of who controlled Plaintiff, deliberately interfering with Plaintiff's Board of Directors' authority to manage Plaintiff, and intending to deny Plaintiff's rights under Oregon law. *See* Record Decl. ¶ 24, Ex. 10, ECF No. 174.; Pl.'s Resp. 13–14. But that assertion relates to conduct that was purposefully directed toward Plaintiff, not conduct that was purposefully directed toward Oregon, the forum itself.[2] Plaintiff alleges no conduct that occurred in Oregon itself, no conduct that creates a substantial connection between Zielke, et al. and Oregon; rather, the suit-related conduct arises out of Zielke, et al.'s contacts with an Oregon corporation, an insufficient basis for personal jurisdiction under *Walden*. Any mention of Oregon law or an Oregon state agency was due to *Plaintiff's* connections to Oregon, and was not a result of Zielke, et al.'s purposeful contacts with the state. *See* Pl.'s Resp. 14–16. And even if the alleged conduct had an effect on Plaintiff in Oregon, under *Walden,* mere injury to a forum resident is not a sufficient connection to establish personal jurisdiction. In fact, Plaintiff's incorporation in Oregon is the only connection any Defendant, including Nordstom himself, has with the District of Oregon. But that lone connection does not mean, as Plaintiff would have the Court believe, that the Court has personal jurisdiction over any party whose actions taken in another state impact Plaintiff. Personal jurisdiction requires more.
>
>   Given the above, Defendants Zielke, et al.'s treatment of Plaintiff was not "expressly aimed" at Oregon, and it follows that they did not "purposefully avail" themselves of the privilege of conducting activities in Oregon. Plaintiff's three claims as alleged in the complaint all relate to Zielke, et al.'s conduct as Plaintiff's counsel in Kentucky. Ultimately, the Court must look to a defendant's actions and determine whether purposeful acts exist—expressly aimed at Oregon—that would make Oregon's exercise of jurisdiction proper. In this case, the Court finds no such acts.

*Id*. at 7-9 (footnotes in original).

>   Notably, the Court dismissed the claims against the Zielke Defendants *without* prejudice.

In a footnote, the Court concluded that even assuming it had personal jurisdiction over these

---

[2] "The discussion below will demonstrate that Plaintiff's attorney client relationship with Defendants extended beyond the Kentucky litigations and that Defendants' conduct giving rise to Plaintiff's claims was specifically *directed at Plaintiff's rights under Oregon law and Plaintiff's activities in Oregon*." Pl.'s Resp. 1–2 (emphasis added).

3 – OPINION AND ORDER

Defendants, "venue in Oregon is improper because all of the acts or omissions giving rise to Plaintiff's claims occurred in Kentucky." *Id.* at n.8. Instead of filing amended claims against the Zielke Defendants, LEEP chose to file a similar action against those Defendants in the Western District of Kentucky. ECF No. 192, Ex. 1. Eight months ago, LEEP and Zielke agreed that this Court should certify the December 5, 2022, Opinion and Order as a final, appealable order subject to immediate appeal. ECF No. 186. The Court signed their proposed order.

Now, six months after the Court dismissed those claims in a final order, LEEP moves to alter or amend that judgment. ECF No. 189. LEEP filed this motion after the Zielke Defendants moved to dismiss, on statute of limitations grounds, LEEP's claims brought in the Western District of Kentucky. ECF No. 192-2. LEEP argues newly discovered evidence justifies reopening the claims against the Zielke Defendants. LEEP argues this newly discovered evidence "sheds new light" on previously available evidence and justifies aiding and abetting claims against the Zielke Defendants. The Court disagrees.

To the extent any of the evidence is newly discovered, that is simply because LEEP did not act with due diligence to discover the information earlier. LEEP maintained possession of the "newly discovered" evidence 18 months ago. Indeed, the documents were in LEEP's possession more than one year before the December 5, 2022, Opinion and Order was made final. The documents were in 13 bankers boxes the Zielke Defendants provided to LEEP on November 19, 2021. Although LEEP argues it was in "survival mode" during this time, it clearly went through the documents because it relied on some of those documents in its December 30, 2021, motion to find Nordstrom in contempt.[3] LEEP had the bankers' boxes nearly six months before filing

---

[3] In LEEP's response to the attorney Defendants' motion to dismiss, it referenced Zielke's representation of Nordstrom and LEEP in other matters and noted emails from Zielke to LEEP "about Plaintiff's tax issues." ECF No. 173, 2. The Court rejected LEEP's argument that this evidence "demonstrates that Defendants' representation of

4 – OPINION AND ORDER

claims against the Zielke Defendants. The evidence is not "newly discovered" and, even if it were, it is clear LEEP did not exercise due diligence in discovering the information.

Instead, LEEP's motion appears to be a second bite at the apple. LEEP filed the motion to amend after the Zielke Defendants moved to dismiss the Kentucky action. LEEP, however, chose to file that action rather than (1) file amended claims against the Zielke Defendants in this action or (2) appeal this Court's final order concluding it lacked personal jurisdiction against the Zielke Defendants (and, even assuming it had personal jurisdiction, that venue in Oregon was improper). Faced with potential problems with the route LEEP chose to pursue, it seeks to somehow resurrect the claims that were dismissed without prejudice over seven months ago. This is not due diligence.

Additionally, although LEEP argues it now has evidence that the Zielke Defendants were co-conspirators with Nordstrom, it could have brought those claims alongside the original claims against the Zielke Defendants. Nothing in LEEP's "newly discovered" evidence or arguments convince this Court that it would have resulted in a different outcome to the question over whether this Court has personal jurisdiction over the Zielke Defendants. Although the Court understands LEEP disagrees with that analysis, the proper time to voice objections was over six months ago via an appeal or through the filing of an amended complaint. To flush out any amended complaint, any party acting with due diligence would have reviewed the 13 bankers' boxes containing documentation concerning the representation at issue. Again, LEEP possessed those documents for over 6 months before filing any claims against the attorney Defendants.

---

Plaintiff was broader than just the Original Suit and the Arbitration or other related litigation in Kentucky." ECF No. 173, 3. LEEP's response, filed over one year ago, also referenced the Zielke Defendants' advising LEEP and Nordstrom "on matters related to corporate governance of [LEEP]." LEEP filed that response over one year ago. It is debatable whether any of this alleged newly discovered evidence is actually newly discovered.

5 – OPINION AND ORDER

Additionally, as noted above, LEEP clearly reviewed at least some of those documents before urging the Court to find Nordstrom in contempt and in responding to the attorney Defendants' motion to dismiss. The Court agrees with the Zielke Defendants:

> LEEP's Motion to Vacate is an attempt to shoehorn in a new legal argument, in order to re-litigate this Court's ruling on personal jurisdiction. LEEP's "newly discovered evidence" is in fact nothing new; it repeats dismissed factual allegations to raise a new, specious theory of co-conspirator personal jurisdiction that could have been raised when LEEP sued Zielke, et al. in April 2022. LEEP's attempted re-litigation of the previously dismissed case is also too late.

Resp. 34, ECF No. 192.

In the alternative LEEP "moves that the case not be dismissed without prejudice but instead transferred . . . to the Western District of Kentucky. ECF No. 189, 29. The claims LEEP seeks to transfer, however, were dismissed nearly one year ago. That was a final, appealable order (that LEEP chose not to appeal). There are no live claims to transfer. And as discussed above, LEEP has not met its rule 60 burden to alter or amend the judgment or the December 5, 2022, Opinion and Order. The Court is aware of no authority to justify transferring long-dismissed claims to avoid unintended or undesired results stemming from strategic choices a party deliberately chose to pursue nearly one year ago.

## CONCLUSION

LEEP's motion to alter or amend Judgment, ECF No. 189, is DENIED.

IT IS SO ORDERED.

DATED this 15th day of September 2023.

_____/s/ Michael J. McShane_____
Michael McShane
United States District Judge

6 – OPINION AND ORDER